FILED: NEW YORK COUNTY CLERK 08/30/2011

NYSCEF DOC. NO. 1

INDEX NO. 652400/2011

RECEIVED NYSCEF: 08/30/2011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------X

NIGHTINGALE PROPERTIES, LLC,
ELCHONON SCHWARTZ and
SIMON SINGER,

                         Plaintiff(s),

    -against-

BANK OF AMERICA, N.A.,
CW CAPITAL ASSET MANAGEMENT LLC,
and THOMAS SHEARER,

                         Defendant(s).

-----------------------------------------------------------X

Index No.
Date Purchased
August 30, 2011

Plaintiff(s) designate(s)
New York
County as the place of trial.
The basis of the venue is
CPLR § 503

**SUMMONS**

Plaintiff(s) reside(s) at
1430 Broadway,
New York, NY

County of New York

To:  BANK OF AMERICA, N.A.
      CT CORPORATION, Registered Agent
      150 Fayetteville Street, Box 1011
      Raleigh, NC 27601

      CW CAPITAL ASSET MANAGEMENT, LLC
      Scott D. Spelfogel, Registered Agent
      One Charles River Place
      63 Kendrick Street
      Needham, MA 02494

THOMAS SHEARER
5956 Sherry Lane, Suite 1201
Dallas, TX 75225

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve
a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorneys within 20 days after service of the summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York); and in case of your failure to appear
or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: August 30, 2011

                       BOIES, SCHILLER & FLEXNER LLP

                       By:

                       Edward Normand
                       333 Main Street
                       Armonk, NY 10504
                       (914) 749-8200
                       *Attorney for Plaintiff(s)*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| NIGHTINGALE PROPERTIES, LLC,<br>ELCHONON SCHWARTZ and<br>SIMON SINGER,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br>CW CAPITAL ASSET MANAGEMENT LLC,<br>and THOMAS SHEARER,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Index No. _____ |

## COMPLAINT FOR LIBEL

Plaintiffs Nightingale Properties, LLC, Elchonon Schwartz and Simon Singer (collectively, "Plaintiffs"), by and through their attorneys, Boies, Schiller and Flexner LLP, as for this Complaint against Defendants Bank of America, N.A., CW Capital Asset Management LLC, and Thomas Shearer (collectively, "Defendants"), allege as follows:

### **PARTIES**

1.     Plaintiff Nightingale Properties, LLC ("Nightingale") is a limited liability company organized pursuant to the laws of the State of New York with its principal office located at 1430 Broadway, New York, New York.

2.     Plaintiff Elchonon Schwartz is an individual adult resident of the State of New York and serves as Chief Executive Officer (CEO) for Nightingale.

3.     Plaintiff Simon Singer is an individual adult resident of the State of New York and serves as President for Nightingale.

4.     Defendant Bank of America N.A. ("Bank of America") is a national banking association with its principal place of business located at 100 N. Tryon Street, Charlotte, North Carolina, 28255, which at all times herein acted as Successor by Merger to LaSalle Bank National Association, as Trustee for the Registered Holders of LB-UBS Commercial Mortgage Trust 2008-C1, Commercial Mortgage Pass-Through Certificates, Series 2008-C1 (the "Trust") and which may be served with process through its registered agent, CT Corporation, at 150 Fayetteville Street, Box 1011, Raleigh, North Carolina, 27601.

5.     Bank of America maintains an office at One Bryant Park, 115 West 42nd Street, New York, NY 10036.

6.     Defendant CW Capital Asset Management, LLC ("CW Capital") is a limited liability company organized pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business located at One Charles River Place, 63 Kendrick Street, Needham, MA, 02494, and which may be served with process through its registered agent, Scott D. Spelfogel, at One Charles River Place, 63 Kendrick Street, Needham, MA, 02494.

7.     Upon information and belief, CW Capital maintains an office at 1540 Broadway, New York, NY 10036.

8.     Upon information and belief, Defendant Thomas Shearer ("Defendant Shearer") is an individual adult resident of the State of Texas employed in the capacity of Vice President for CW Capital and may be served with process at his place of employment, 5956 Sherry Lane, Suite 1201, Dallas, TX, 75225.

2

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this Complaint pursuant to N.Y. Const., Art. VI § 7(a).

8.      Venue is proper in New York County, New York pursuant to N.Y. CPLR § 503.

## FACTS

(A)     Plaintiffs' Business

9.      In 2005, Messrs. Schwartz and Singer formed Nightingale, which is in the business of commercial property ownership, investment, management and development.

10.     Through special purpose entities, and under the ownership and guidance of Mr. Schwartz and Mr. Singer, the Plaintiffs own and/or manage a large and diverse commercial property portfolio, comprised of office buildings, retail shopping and industrial centers in major markets across the eastern United States.

11.     Nightingale as an entity, and Messrs. Schwartz and Singer, individually, rely and depend upon their financial reputation and industry stature to ensure success in the real estate market and acquire additional commercial properties.

12.     Nightingale Realty, LLC, an affiliate of Nightingale, served as property manager of four retail properties located respectively at 228 Parkstone Place, Jackson, TN; 340 Parkstone Place, Jackson, TN; 1923 Emporium Drive, Jackson, TN; and 1165 Vann Drive, Jackson TN (the "Properties").

13.     The owners of the Properties were Tennessee limited liability entities registered under the names NG 228 Parkstone, LLC; NG 340 Parkstone, LLC; NG 1923 Emporium, LLC; and NG 1165 Vann, LLC, respectively (the "Owners").

3

(B)    The Loan Documents

14.    On or about December 15, 2007, the Owners, as Borrower, borrowed funds from Lehman Brothers Bank, FSB (the "Lender") pursuant to a *Promissory Note* (the "Note") in the amount of Ten Million Five Hundred Thousand Dollars ($10,500,000.00).

15.    The Owners, as Borrower, granted to the Lender a first security interest in the Properties pursuant to a *Deed of Trust, Fixture Filing and Security Agreement*, dated as of December 21, 2007 (the "Deed of Trust").

16.    Messrs. Schwartz and Singer executed a *Guaranty of Recourse Obligation of the Borrower*, dated December 21, 2007 (the "Guaranty").

17.    In or about April 2009, Defendant Bank of America, through an *Assignment*, assumed the role of Lender under the Note, Deed of Trust, Guaranty, and other loan documents (the "Loan Documents").

18.    Upon information and belief, CW Capital has been the Special Servicer for Bank of America and its predecessors to service the Note, Deed of Trust and the Loan Documents.

19.    The recourse provisions under the Guaranty can be triggered only by certain discrete and specific breaches provided for under the Deed of Trust (the "Recourse Breaches").

20.    On or about March 2, 2010, Defendant Bank of America as Lender, through CW Capital, as the Special Servicer, sent a *Notice of Default* to the Borrower under the Loan and Deed of Trust, setting forth certain non-payment defaults under the Note and Deed of Trust.

21.    In the *Notice of Default* provided by Defendants Bank of America and CW Capital, no identification, expressed or implied, was made concerning any Recourse Breach or

4

any breach under Section 4.2 of the Deed of Trust.  A copy of the *Notice of Default* is attached hereto and incorporated herein as **Exhibit A**.

22.     No opportunity to cure any Recourse Breach was provided to Borrowers or Messrs. Schwartz and Singer.

(C)     <u>The Loan Action</u>

23.     On or about May 4, 2010, Bank of America and CW Capital, filed a *First Amended Complaint*, against the Owners-Borrower and Mr. Schwartz and Mr. Singer, in the Chancery Court of Madison County, Tennessee under <u>Bank of America, N.A., et al., v. NG 1923 Emporium, LLC, et al.</u>, CV-66954/2010 (the "Loan Action").

24.     In the Loan Action, Bank of America and CW Capital asserted four counts against the Owners/Borrower for: (1) Appointment of a Receiver; (2) Temporary Restraining Order; (3) Temporary and Permanent Injunction, and (4) Breach of Contract (monetary default).

25.     In the Loan Action, Bank of America and CW Capital also asserted a single claim against Messrs. Schwartz and Singer for "Breach of Contract – Guaranty."

26.     On May 11, 2010, a hearing was held upon Bank of America and CW Capital's application for Appointment of a Receiver.

27.     In connection with the May 11 hearing, Bank of America and CW Capital did not seek any relief against Mr. Schwartz or Mr. Singer or any determination concerning the Guaranty in their Notice of Hearing on the Application for Receiver.

28.     On or about May 11, 2010, Bank of America and CW Capital submitted to the Tennessee Chancery Court a proposed Order outlining the Court's determination and appointing a receiver over the Properties (the "Receiver Order").

29.     Bank of America and CW Capital's proposed Receiver Order made no mention of

Messrs. Schwartz or Singer, the Guaranty, any alleged Recourse Breaches, nor any liability

asserted against Messrs. Schwartz or Singer under the Guaranty.

30.     To the contrary, Bank of America and CW Capital's proposed Receiver Order

stated: "The Court will reserve judgment on all matters addressed in the Complaint not expressly

addressed by this Order and will address those issues at the trial of this matter or upon motion of

either party."

31.     On May 11, 2010, the Court entered the Receiver Order, as drafted by Bank of

America and CW Capital and described above.  Accordingly, the Court's Order made clear that

it was reserving judgment on all matters in the Complaint apart from those expressly addressed

in the Order.  A copy of the Receiver Order is attached hereto and incorporated herein as **Exhibit

B.**

32.     On or about July 29, 2010, Bank of America foreclosed upon the Properties.

### DEFENDANTS' LIBEL

33.     Shortly after the Court entered its Order, Defendants willfully published false and

libelous statements of and concerning Plaintiffs that were intended to, and did, damage

Plaintiffs' reputation in the real estate market, and cause Plaintiffs to suffer substantial pecuniary

and special damages.

34.     In complete defiance of the facts, with malice, and with no good faith basis,

Defendants published to the real estate market in the United States in which Plaintiffs do

business that, in addition to appointing a receiver in the Loan Action, the Court also specifically

declared that the recourse provisions of the Deed of Trust and the Guaranty had been breached

6

and that Messrs. Schwartz and Singer were liable under the "full recourse" provisions of the
Guaranty.

35.     Specifically, beginning on or about August 31, 2010, Defendants published five
false and libelous reports, with respect to each of the four Properties, that stated:

> On 5/11/10, the Jackson, TN Court granted our motion to
> appoint a receiver. **The Court also found that the
> Borrower had violated the SPE provisions by taking on
> additional and unauthorized debt by its own admission.
> As a result, the Court declared that the loan is now full
> recourse to the Guarantors.**

(Emphasis added.)

36.     Defendants published similar false and defamatory statements on September 15,
2010, November 15, 2010, December 15, 2010, and January 1, 2011.

37.     These false and defamatory statements referred to Messrs. Schwartz and Singer,
the Guarantors under the loan.

38.     These false and defamatory statements were reasonably understood by members
of the real estate community and banks and lenders as referring to Nightingale.

39.     These false and defamatory statements were reasonably understood by members
of the real estate community and banks and lenders as discrediting the way in which Messrs.
Schwartz and Singer conduct their real estate business through Nightingale.

40.     Copies of these false and libelous publications are attached hereto and
incorporated herein as **Exhibit C**.

41.     In fact, and as Defendants knew and should have known, the Court in the Loan
Action had <u>not</u> found that the Borrower had violated the SPE provisions of the Note, and the

Court in the Loan Action had <u>not</u> entered any Order or Judgment holding that the Borrower had violated the SPE provisions of the Note.

42.     In fact, and as Defendants knew and should have known, the Court in the Loan Action had <u>not</u> declared, found, held, or entered any judgment that the loan was in full recourse against Messrs. Schwartz and Singer as the Guarantors.

43.     In fact, and as Defendants knew and should have known, the Court expressly stated in its Order that it was <u>not</u> addressing the claim against Messrs. Schwartz and Singer as the Guarantors: "The Court will reserve judgment on all matters addressed in the Complaint not expressly addressed by this Order and will address those issues at the trial of this matter or upon motion of either party."

44.     Defendants knew and should have known that the Court in the Loan Action had <u>not</u> found that the Borrower had violated the SPE provisions of the Note and had <u>not</u> declared that the loan was in full recourse against Messrs. Schwartz and Singer because, among other reasons, Defendants themselves had drafted the foregoing Receiver Order, which was entered by the Court and which made no mention of any alleged Recourse Breaches and made no mention of any liability asserted against Messrs. Schwartz or Singer under the Guaranty.

45.     Indeed, in rejecting the Defendants' claim that the Chancery Court had decided against Messrs. Schwartz and Singer at the May 2010 hearing as published by Defendants, the Chancery Court held that the published statements were false: "[Nightingale, Mr. Schwartz, and Mr. Singer] argue that the Court made no such ruling, that this issue was not before the Court, and that it did not gain mention in the Ordered entered as a result of the May 11, 2010 hearing. . . The Court agrees with [Nightingale, Mr. Schwartz, and Mr. Singer] on this point. The Court is

8

not prepared to base a summary judgment on comments made by the Court at the hearing on May 11, 2010 which did not particularly address the details of Section 4.2."

46.     Defendants published each of these false and libelous statements as part of the notes that are published periodically by the Special Servicer with respect to Trust, Bonds and other financial matters that it services.

47.     Defendants knew and intended that these false and libelous statements would be copied and re-published, as a matter of practice and course of conduct, in national industry publications that service, are reviewed by, and inform the real estate market, including credit agencies, banks and other financial institutions, including such publications as InvestCap, and other national reporting publications and sites.

48.     Indeed, CW Capital, which is a Special Servicer, has a history, pattern and practice of publishing and otherwise making available to the industry notes concerning the status of the debt instruments and related borrowers and guarantors, and fully knows that its notes are the subject of re-publication in national publications and other sites as alleged above and herein.

49.     On January 14, 2011, Defendants' attorney, Newlyn Inman, sent an email to Plaintiffs' attorney, Joshua Kahane, acknowledging that Defendants' publication was false, agreeing "to provide correct information to anyone" necessary at that point in time and noting that CW Capital "has submitted a revised comment" to correct the libelous statement.

50.     Defendants intended and directly caused the false and libelous statements to be published and re-published and have already caused substantial and irreparable damage to Nightingale, Messrs. Schwartz and Singer.

51.     Upon information and belief, at all relevant times herein, Defendant Shearer was acting at the direction of, and had authority to speak for, CW Capital.

52.     Upon information and belief, it was part of Defendant Shearer's duties as Vice President of CW Capital to publish notes about matters that CW Capital services.

53.     Upon information and belief, Defendant Shearer, individually and as the designated representative of CW Capital, authorized and approved each of the false and libelous publications.

54.     Upon information and belief, for all acts alleged herein, CW Capital acted in its capacity as agent for Bank of America and was authorized to speak on behalf of Bank of America concerning matters related to the Loan Action.

55.     Upon information and belief, for all acts alleged herein, such acts were undertaken with Bank of America's knowledge and/or at Bank of America's direction, or they were ratified by Bank of America after they occurred.

56.     In December 2010 and January 2011, Messrs. Schwartz and Singer, on behalf of Nightingale, completed applications for financing an office building in Georgia.  Unaware of Defendants' publication of the false and libelous statements, Messrs. Schwartz and Singer truthfully stated in those applications that no adverse judgments had been entered against Plaintiffs in the past.

57.     However, unbeknownst to Plaintiffs, Defendants had published to the real-estate market, credit agencies, banks and other financial institutions that the Chancery Court in Tennessee had ruled that Messrs. Schwartz and Singer were liable under the full-recourse provision of the Guaranty.

10

58.     Accordingly, upon information and belief, Plaintiffs were perceived as having transmitted false information to lenders in their financing application, thereby causing significant damage to their integrity and trustworthiness.

59.     As a direct and proximate consequence of Defendants' publication of the false and libelous statements, on or about December 28, 2010, a lender determined that it would not provide the financing for the acquisition of a One Hundred Sixty Thousand (160,000) sq. ft. office building in Georgia.

60.     As a direct and proximate consequence of Defendants' publication of the false and libelous statements, on or about January 14, 2011, another bank advised Nightingale that it also would not provide the financing for the acquisition.

61.     As a direct and proximate consequence of Defendants' libel, Plaintiffs were unable to conduct their business and could not enter into or close on several deals beginning in August 2010.

62.     The damages directly and proximately caused by Defendants' publication of the false and libelous statements continue to this date and are expected to continue to cause similar and substantial monetary and special damages to Nightingale, and Messrs. Schwartz and Singer. Defendants' publication of the false and libelous statements prevents Plaintiffs from conducting their usual business.

63.     Because of Defendants' libel, banks and lenders erroneously believe that Plaintiffs falsified applications for financing by not admitting that they had been subject to an adverse judgment.

64.    As a result, these banks and lenders will not do business with Plaintiffs because they believe, as a direct and proximate consequence of Defendants' libel, that Plaintiffs are dishonest and untrustworthy which has plainly hindered and materially prevented Plaintiffs from obtaining the financing necessary to continue its business.

65.    Because of Defendants' libel, during the period of August 2010 to July 2011, banks and lenders erroneously believed that a court had determined that Plaintiffs had violated provisions of the loan agreements by taking on additional and unauthorized debt and having thus triggered the recourse provisions of the Deed of Trust and the Guaranty. As a result, these banks and lenders did not do business with Plaintiffs, including because such judicial findings would have impaired the marketability of notes securing loans to Defendants.

66.    As a direct and proximate consequence of Defendants' publication of the false and libelous statements, Nightingale has been damaged by, including, but not limited to, the loss of syndication fees in the amount of Four Hundred Seventy-Five Thousand Dollars ($475,000.00); legal and due diligence costs of Sixty Thousand Dollars ($60,000.00); annual management fees of One Hundred Fifty- Six Thousand Dollars ($156,000.00); and annual returns of not less than Eight-Five Thousand Dollars ($85,000.00).

67.    As a direct and proximate consequence of Defendants' libel, Plaintiffs were forced to institute this action to protect and defend their reputation and have thereby been damaged by incurring legal fees and costs.

68.    Based on the foregoing, each of the Defendants is liable to Plaintiffs for damages, actual and punitive, stemming from the publication of libelous statements.

## FIRST CAUSE OF ACTION
### LIBEL

69.     Plaintiffs repeat and reallege paragraphs 1-68 as if set forth herein.

70.     On or about August 31, 2010, Defendants published to the real estate market, credit agencies, banks and other financial institutions in the United States in which Plaintiffs do business that the Court in the Loan Action had specifically declared that the recourse provisions of the Deed of Trust and the Guaranty had been breached and that Messrs. Schwartz and Singer were liable under the "full recourse" provisions of the Guaranty.

71.     Defendants published similar false and defamatory statements on September 15, 2010, November 15, 2010, December 15, 2010, and January 1, 2011.

72.     The statements published by Defendants were false and Defendants published these statements with knowledge or reckless disregard of their falsity.

73.     By publishing these false and libelous statements, Defendants intended to and did impugn the integrity and trustworthiness of Plaintiffs as managers and owners of commercial real estate in the United States.

74.     As a direct and proximate consequence of Defendants' libel, Defendants have caused Plaintiffs to suffer damages.

75.     Accordingly, Plaintiffs seek actual and punitive damages against Defendants in an amount to be determined at law or at trial.

**WHEREFORE,** Plaintiffs demand as follows:

1.      That Plaintiffs be awarded a judgment against the Defendants, jointly and severally, in the amount of Ten Million Dollars ($10,000,000.00) plus pre and post judgment interest as provided by law.

2.      That Plaintiffs be awarded a judgment against the Defendants, jointly and severally, in the amount of their out-of-pocket expenses and reasonable attorney fees;

3.      That Plaintiffs be awarded a judgment against the Defendants, jointly and severally, for punitive damages in an amount to be determined at trial.

4.      That Plaintiffs reserve the right to amend this pleading to conform with facts as they develop; and

5.      That the Plaintiffs be granted such further and other relief as the Court may deem proper.

Dated:      August 30, 2010
            Armonk, New York

                                        Respectfully submitted,

                                        BOIES, SCHILLER & FLEXNER LLP

                                        By: _____
                                        Edward Normand
                                        Jason Cyrulnik
                                        333 Main Street
                                        Armonk, New York 10504
                                        Tel:  (914) 749-8200

STATE OF NEW YORK, COUNTY OF NEW YORK,
SS.: I, NORMAN GOODMAN, COUNTY CLERK AND
CLERK OF THE SUPREME COURT, NEW YORK
COUNTY, DO HEREBY CERTIFY ON

TRANSCRIPT THEREFROM AND OF THE
WHOLE OF COURT ORIGINAL IN WITNESS
WHEREOF, I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY OFFICIAL SEAL.

2012 JAN 11  P 3:12              439418

THAT I HAVE COMPARED THIS COPY
WITH THE ORIGINAL FILED IN MY OFFICE ON

8/30/11

AND THAT THE SAME IS A CORRECT

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY
FACSIMILE SIGNATURE USED PURSUANT
TO JUD. LAW, COUNTY LAW. FEE PAID

FILED: NEW YORK COUNTY CLERK 08/30/2011

NYSCEF DOC. NO. 1-1

INDEX NO. 652400/2011

RECEIVED NYSCEF: 08/30/2011

# EXHIBIT A



**BAKER
DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

1800 REPUBLIC CENTRE
633 CHESTNUT STREET
CHATTANOOGA, TENNESSEE
37450
PHONE: 423.756.2010
FAX: 423.756.3447
www.bakerdonelson.com

NELWYN W. INMAN
Direct Dial: (423) 752-4405
Direct Fax: (423) 752-9587
E-Mail Address: ninman@bakerdonelson.com

March 2, 2010

*Via Overnight Carrier*

NG 1923 Emporium, LLC
NG 340 Parkstone, LLC
NG 1165 Vann, LLC
NG 228 Parkstone, LLC
c/o Nightingale Properties, LLC
1430 Broadway, Suite 1605
New York, New York 10018

Re:   Loan (the "Loan") in the original stated principal amount of $10,500,000.00 from Lehman Brothers Bank, FSB (the "Original Lender") to NG 1923 Emporium, LLC, NG 340 Parkstone, LLC, NG 1165 Vann, LLC, and NG 228 Parkstone, LLC (collectively, the "Borrower"), as assigned to Bank of America, N.A. as successor by merger to LaSalle Bank National Association as Trustee for the registered holders of LB-UBS Commercial Mortgage Trust 2008-C1, Commercial Mortgage Pass-Through Certificates, Series 2008-C1 ("Holder") – *Notice of Default, Demand for Payment, & Intent to Accelerate Indebtedness and Revoke License*

Dear Borrower:

This firm represents CWCapital Asset Management LLC solely in its capacity as Special Servicer for Holder ("CWCAM").  Holder is the owner and holder of the following documents relating to the Loan (collectively, the "Loan Documents"):

1.  That certain Promissory Note dated December 21, 2007 in favor of Original Lender in the original principal amount of $10,500,000.00 to evidence the Loan (as assumed, amended and modified from time to time, the "Note");

2.  That certain Deed of Trust, Fixture Filing and Security Agreement, dated December 21, 2007, executed by Borrower for the benefit of Original Lender, relating to certain

B MMC1 896799 v2
2904052-000075 03/04/2010

real and personal property defined therein (the "Property") and recorded with the Register of Deeds of Madison County, Tennessee (as assumed, amended, modified, and/or assigned from time to time, the "Security Instrument");

3. That certain Assignment of Leases and Rents, dated December 21, 2007, executed by Borrower in favor of Original Lender and recorded with the Register of Deeds of Madison County, Tennessee (as assumed, amended, modified, and/or assigned from time to time, the "Assignment of Leases and Rents");

4. That certain Guaranty of Recourse Obligations, dated December 21, 2007, executed by Michele Bailey-Horovits in favor of Original Lender (as assumed, amended, modified, and/or assigned from time to time, the "Horovitz Guaranty");

5. That certain Guaranty of Recourse Obligations of Borrower, dated December 21, 2007, executed by Elchonon Schwartz and Simon Singer in favor of Original Lender (as assumed, amended, modified, and/or assigned from time to time, the "Schwartz Simon Guaranty"); and

6. All other documents, instruments and agreements, including without limitation, UCC-1 Financing Statements and UCC-2 Notice Filings, evidencing, securing and/or relating to the Loan, all of which have been transferred and assigned to Holder.

Terms used herein, but which are not otherwise defined herein, shall have the meanings ascribed thereto as set forth in the Loan Documents.

Certain defaults have occurred and are continuing under the Loan Documents, specifically including, without limitation, the failure of Borrower to pay all amounts due under the Loan Documents for the months of December 2009, January 2010, and February of 2010 (the "Existing Payment Defaults"). In addition to the Existing Payment Defaults, other defaults may exist which are not being waived by Holder and may continue notwithstanding any cure of the Existing Payment Defaults. The amount required to cure the Existing Payment Default is $262,975.71 (the "Current Demand Amount"). Please note as well that a payment of $92,802.38 will be due on March 11, 2010. If this payment is not received by March 11, 2010, such failure will constitute an Event of Default, and you will not be entitled to notice of such default.

Based on the Existing Payment Defaults, Holder has the right to exercise any and all of its remedies under the Loan Documents or otherwise at law or in equity. Accordingly, on behalf of Holder, demand is hereby made for Borrower's immediate satisfaction of the Existing Payment Defaults. Please be advised that if the Existing Payment Defaults are not cured within five (5) days from the delivery date hereof, the entire outstanding principal balance of the Note, together with all accrued and unpaid interest at the Default Rate (as defined in Section 4 of the Note), property protection advances, yield maintenance, prepayment fees, late charges, expenses of Holder (including without limitation attorneys' fees) and all other amounts due under the Note, the Security Instrument and the other Loan Documents will be accelerated and become immediately due and payable (collectively the "Loan Obligations"). *The acceleration of the*

*Loan Obligations will occur without further notice or demand in the event the Existing Payment Defaults are not cured within five (5) days from the delivery date hereof.* At that time, the Loan Obligations will be due in full. *Additionally, if the March 2010 payment or other subsequent payments during 2010 are not made timely, the Loan Obligations will accelerate and be due in full immediately upon such failure without further notice or demand.*

In the event that the Existing Payment Defaults are not cured within five (5) days of the delivery date hereof or should other defaults occur, you are hereby further notified that Borrower's license to collect and receive the Rents (as defined in the Assignment of Leases and Rents) granted under the Loan Documents will be revoked without further notice or demand. You are notified that, under and pursuant to Section 3.1 of the Assignment of Leases and Rents, Holder will immediately be entitled to possession of all Rents collected or received by Borrower in the event that the Existing Payment Defaults are not cured as provided in the Loan Documents. Holder hereby demands a full and complete accounting of all Rents received from and after December 11, 2009, and the remittance of all Rents in excess of ordinary operating expenses in the event that the Existing Payment Defaults are not cured within five (5) days of delivery hereof. This demand for accounting and payment is not a waiver of any other rights of Holder under the Loan Documents.

All of Holder's claims, demands and accruals regarding the above-described Loan, whenever made, whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with applicable usury laws, and are accordingly limited so that applicable usury laws are not violated.

Holder reserves the right to exercise, in such order as Holder elects, any one or more of the remedies available to Holder under the Loan Documents or otherwise at law or in equity, including without limitation, the appointment of a receiver as to the Property, and nothing contained in this letter shall constitute a waiver of any rights of Holder to pursue such rights and remedies. Without limiting the generality of the foregoing, you are hereby notified that Holder shall commence non-judicial foreclosure proceedings against the Property. Please be further advised that no past or future delay or omission in the exercise of any right or remedy accruing to Holder as a result of any default or any Event of Default is intended to constitute a waiver of any right or remedy accruing to Holder as a result of that default or any other default or that Event of Default or any other Event of Default.

Payment to Holder in an amount less than the Current Demand Amount, together with all interest accrued thereon after the date of this letter at the Default Rate, shall not be construed as an accord and satisfaction or as Holder's agreement to accept a lesser amount as payment in full of the delinquent Loan. Holder's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment may not be deemed to be an accord and satisfaction, and is not and shall not be deemed to be binding upon Holder. Holder may accept any such payment or check without prejudice to its rights to receive the balance of all amounts due under the Loan Documents or to pursue its remedies.

B MMC1 896799 v2
2904052-000075 03/04/2010

Please note that we have no obligation or duty to inform Borrower or any guarantors of Holder's intention to exercise its rights and remedies. We are, however, doing so in this letter as an accommodation to Borrower. Neither Borrower nor any guarantors shall be entitled to expect notice in the future of Holder's elections or specifications of Borrower's obligations under any of the Loan Documents by reason of Holder's election to provide the notices and specifications set forth in this letter.

Neither this letter nor any statement by or on behalf of Holder as to the amount due and owing under any of the Loan Documents: (i) shall constitute a waiver of any rights of Holder to collect any additional amounts to which Holder may be lawfully entitled pursuant to the terms of the Loan Documents, or otherwise at law or in equity or (ii) shall constitute an offer to settle or waive any rights of Holder under any of the Loan Documents.

**THIS FIRM AND HOLDER ARE ATTEMPTING TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE NOTE AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, AND TERMS AND PROVISIONS CONTAINED WITHIN THE LOAN DOCUMENTS, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

We have been advised and have no knowledge of any pending bankruptcy proceedings involving the Borrower. To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. Section 362(b)(11), if applicable.

You are hereby notified that Holder shall strictly enforce the Loan Documents in accordance with their respective terms. A copy of this notice is being sent to the guarantors to alert them to the severity of the situation.

Very truly yours,

*Nelwyn Inman*

Nelwyn Inman

NI

cc:    Michele Bailey-Horovits
       Elchonon Schwartz
       Simon Singer
       Thomas Shearer

B MMCI 896799 v2
2904052-000075 03/04/2010

FILED: NEW YORK COUNTY CLERK 08/30/2011

NYSCEF DOC. NO. 1-2

INDEX NO. 652400/2011

RECEIVED NYSCEF: 08/30/2011

# EXHIBIT B

From: 731 988 3091      Page: 1/8      Date: 2/23/2011 10:38:51 AM 731 988 30910

## IN THE CHANCERY COURT OF MADISON COUNTY, TENNESSEE

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF LB-UBS COMMERCIAL MORTGAGE TRUST 2008-C1, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2008-C1, ACTING BY AND THROUGH CWCAPITAL ASSET MANAGEMENT LLC, SOLELY IN ITS CAPACITY AS SPECIAL SERVICER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 66954 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NG 1923 EMPORIUM, LLC, NG 340 PARKSTONE, LLC, NG 1165 VANN, LLC, AND NG 228 PARKSTONE, LLC, ELCHONON SCHWARTZ, AND SIMON SINGER, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |

ENTERED
5-11-10

### ORDER APPOINTING RECEIVER

THIS CAUSE, coming to be heard on the Verified Complaint for the Appointment of Receiver, Temporary Restraining Order, Temporary and Permanent Injunction, and Breach of Contract (the "Complaint") brought herein by Bank of America, N.A. as successor by merger to Lasalle Bank National Association, as Trustee for the registered holders of LB-USB Commercial Mortgage Trust 2008-C1, Commercial Mortgage Pass-Through Certificates, Series 2008-C1, acting by and through CWCapital Asset Management LLC, solely in its capacity as Special Servicer, the Court being advised of the premises, and cause having been shown that Plaintiff is entitled to the relief sought, it is hereby ORDERED, ADJUDGED AND DECREED that:

1

C THL01 505058 v2
2904052-000075 05/10/2010

ENTERED MINUTE BOOK 403 PAGE 412

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

1.     Pursuant to TENN. CODE ANN. § 29-1-103, Baker Storey McDonald Properties Inc. (the "Receiver") is hereby appointed as receiver of the Collateral (as defined in the Complaint), including all real and personal property which comprise the Centers (as defined in the Complaint), effective immediately.

2.     Defendants are ordered immediately to surrender complete control of the Centers to the Receiver, to provide the Receiver with uninterrupted access to and control over all books, records, accounts and documents relating to the Centers and the operations thereon, and to remit to the Receiver all funds currently in possession of Defendants which are rents, revenues or proceeds of the Centers.

3.     Defendants shall pay to the Receiver or agent appointed by the Receiver all funds received from and after the date of this Order which constitute Rents.

4.     Defendants shall immediately turn over to Receiver all books, records, security deposits, escrows, leases, contracts, computers and access to all financial and other information relating to the Centers and the operations thereon maintained in any form including electronically, including information regarding computers and software programs utilized by Defendants and all administrator access codes thereto in order to give the Receiver full access to all such information relating to the Centers and the operations thereon.

5.     Any and all other persons and entities in possession of or having custody or control over any documents, books, or accounting records relating to the operation of the Centers, including, but not limited to the Defendants, shall deliver them to the Receiver forthwith, and shall account for and pay over to the Receiver any Rents in his/her/its possession, either in the form of rents, profits, or security deposits. Included within these records are copies, if any, of all service contracts and utility bills, any and all current or past operating statements of

C THL01 505058 v2
2904052-000075 05/10/2010

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

From: 731 988 3091     Page: 3/8     Date: 2/23/2011 10:38:52 AM 731 988 30910

the Centers, and any other documents maintained by Defendants or their agents pertinent to the management of the Centers.

6.       Until further order of this Court, Defendants and those acting in concert with the Defendants on notice of this Order, are hereby restrained and enjoined from interfering in any way with the Receiver's access to the Centers or with the Receiver's management of the Centers or the operations thereon during the pendency of this action.

7.       The Receiver shall, at Defendants' expense, have all of the usual powers and duties of receivers in similar cases, as set forth in the Complaint, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate, market, sell and otherwise use or permit the use of the Centers, subject to Plaintiff's approval (collectively, the "Receiver's Powers"), including without limitation:

(a)       Enter upon and take possession and control of the Centers and all other Collateral, and to perform all acts necessary and appropriate for the operation and maintenance thereof;

(b)       Take and maintain possession of all documents, books, records, papers and accounts relating to the Centers;

(c)       Exclude Defendants and their agents, servants and employees wholly from the Centers, including changing any and all locks to the Centers;

(d)       Allow Plaintiff, its counsel, appraisers, and other independent third-party consultants engaged by Plaintiff or its counsel access to the Centers at all reasonable times to inspect the Centers and all books and records, and to cooperate with Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Centers.

C THL01 505058 v2
2904052-000075 05/10/2010

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

(c)     Manage and operate the Centers under any existing name or trade name (or new name) if the Receiver deems appropriate to do so, subject to the consent of Plaintiff;

(f)     Exercise any and all rights of Defendants and/or Plaintiff (in any event subject to Plaintiff's consent) in and to any and all license and/or franchise agreements;

(g)   . Retain, hire or discharge on-site employees at the Centers (none of whom are or shall be deemed to be employees of Plaintiff) without any liability to the Receiver or Plaintiff;

(h)     Establish pay rates for on-site employees at the Centers;

(i)     Preserve, maintain, and make repairs and/or alterations to the Centers;

(j)     Conduct a marketing or leasing program with respect to the Centers, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Centers under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable;

(k)     Employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Plaintiff may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers granted therein;

(l)     Execute and deliver, as attorney-in-fact and agent of Borrower or in Borrower's own name, such documents and instruments as are necessary or appropriate to consummate transactions authorized by order of this Court;

(m)     Enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable;

4

C THLD1 505058 v2
2904052-000075 05/10/2010

(n)     Collect and receive all Rents from the Centers;

(o)     Eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

(p)     Sue for unpaid Rents, payments, income or proceeds in the name of Borrower;

(q)     Maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent;

(r)     Compromise or give acquittance for Rents, payments, income or proceeds that may become due;

(s)     Determine and report to the Court and Plaintiff whether any Rents previously received by Defendants have been used for purposes other than for the maintenance, management and expenses of the Centers;

(t)     Require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders and employees of the Defendants to return any and all Rents in their possession;

(u)     To open and review mail directed to Borrower and its representatives pertaining to the Centers or the Collateral;

(v)     Analyze, determine and implement the best approach to maximize value from the Collateral for the benefit of Borrower's creditors and interest holders, including without limitation, marketing and selling the Centers as a going concern, subject to Plaintiff's prior written approval, provided, however, that in no event shall Receiver's power to sell the property, or any other power granted hereunder, in any way impair Plaintiff's ability to exercise its rights

5

C THL01 505058 v2
2904052-000075 03/10/2010

From: 731 988 3091   Page: 6/8   Date: 2/23/2011 10:38:53 AM731 988 30910

and remedies under the Loan Documents, including, without limitation, the right to foreclose the Deed of Trust;

(w)   Facilitate the assumption of the Loan by a third party, subject to Plaintiff's prior written approval;

(x)   Enter into contracts and agreements necessary to continue normal operations of the Centers in the name of Borrower or Receiver;

(y)   Amend, modify or terminate any existing contracts affecting the operations of the Centers, but only upon terms and conditions that are subject to Plaintiff's approval;

(z)   Pay all appropriate real estate taxes, personal property taxes, or other taxes or assessments against the Centers;

(aa)   Exercise all rights of Defendants in and to all government-issued permits, certificates, licenses or other grants of authority, to take all steps necessary to ensure the continued validity of such permits, certificates and licenses, and to take all steps necessary to comply with all requirements, regulations and laws applicable to the Centers;

(bb)   Maintain a separate account with a federally insured banking institution or a savings association with offices in the State of Tennessee in the Receiver's own name, as Receiver, from which the Receiver shall disburse all payments authorized by order of this Court;

(cc)   Receive and endorse checks pertaining to the Centers, either in Receiver's name or in Defendants' name;

(dd)   Do any acts which Plaintiff in its sole discretion deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable (as Plaintiff in

6

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

its sole discretion deem appropriate or desirable) to implement and effectuate the provisions of the Loan Documents.

8.      The Receiver shall maintain accurate accounting and other records of its activities in connection herewith and shall file reports detailing the results from operations of the Centers as subsequently ordered by the Court.

9.      The Receiver shall serve at the pleasure of this Court and shall be compensated for its services in an amount equal to the Receiver Fee (as defined in the Complaint).

10,     The receipts received from the operation of the Centers shall be applied to reimburse the Receiver for all reasonable costs and expenses that it (or its delegates) incur as a result of serving as receiver, for payment of insurance premiums and management fees authorized thereunder, to compensate Receiver for its services as receiver, and for payment of all Obligations (as defined in the Complaint).

11.     Nothing in this Order shall impair or in any manner prejudice the rights of Plaintiff to receive payment of the Rents and Profits pursuant to the terms and provisions of the Loan Documents or to exercise its other rights and remedies as to the Collateral.

12.     The Receiver is hereby authorized to remit to Plaintiff all funds, proceeds and rents, including the Rents and Profits, that constitute collateral of Plaintiff for application to the indebtedness of Defendants under the Loan Documents, to the extent not expended for any of the purposes herein authorized.

13.     The Receiver shall be named as an additional insured party on existing liability and property damage insurance policies on the Centers and if needed, is authorized to obtain customary insurance coverage for the Centers, as a property expense.

7

C THL01 505058 v2
2904052-000075 03/10/2010

14.     This Order is without prejudice to the right of the Receiver to make future application to this Court by motion and upon notice to all parties for further or other authority as may be necessary in its performance of its duties, including without limitation expanded powers.

15.     The Receiver will assume all of its rights, powers, duties, liabilities, or responsibilities as receiver, and shall undertake any actions necessary of any kind as receiver, effective immediately upon entry hereof and shall continue in said duties pending further order of the Court provided that a bond in the amount of $ _20,000.00_ is posted with the Court within three (3) business days of entry of this Order.

16.     Court will reserve judgment on all matters addressed in the Complaint not expressly addressed by this Order and will address those issues at the trial of this matter or upon motion of either party.

Entered this the _11th_ day of May, 2010.

_____
Chancellor

Approved for entry:

BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC

By: _____
Nelwyn Inman (TN BPR No. 13624)
Robert Tom (TN BPR No. 26636)
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450-1800
Ph.: (423) 756-2010
Fax: (423) 752-9587
ninman@bakerdonelson.com
*Attorneys for Plaintiff*

8

C THL01 505058 v2
2904052-000075 05/10/2010

FILED: NEW YORK COUNTY CLERK 08/30/2011

NYSCEF DOC. NO. 1-3

INDEX NO. 652400/2011

RECEIVED NYSCEF: 08/30/2011

# EXHIBIT C



| Status Highlights | |
|---|---|
| **Payment Status** | : 90+ Days Delinquent |
| **At Special Servicer** | : Yes |
| **Workout Strategy** | : REO |

## Property Information

| | | | | | |
|---|---|---|---|---|---|
| Property Address | : 1923 Emporium Drive | Property Name | : Moe's Building | | |
| Property City | : Jackson | SMSA Name | : Jackson,TN | Property Type | : Retail |
| Property State | : TN | Region Name | : East South Central | Property Status | : Same as at Contribution |
| Property Zip Code | : 38305 | Property Condition | : Good | # of Properties | : 004 |
| Property County | : MADISON | | | # of Units | : |
| | | | | Net Rentable Sq Ft | : 7,070 |

## Property Valuation

| | | | |
|---|---|---|---|
| Valuation at Contribution | : $1,175,000.00 | Original LTV | : 77.92 % |
| Contribution Valuation Date | : 09/28/2007 | Current LTV | : 1351.44 % |
| Most Recent Value | : $775,000.00 | Updated Periodic Property Value | : $6,926,000.00 |
| Most Recent Valuation Date | : 03/15/2010 | Periodic Value Date | : 03/15/2010 |
| Last Inspection Date | : 09/21/2009 | ARA Amount | : $3,002,826.53 |
| Deferred Maintenance | : N | ARA Date | : 12/13/2010 |

## Property Ownership Information

| | |
|---|---|
| Owner Name | : 1923 EMPORIUM DRIVE HOLDINGS L, |
| Owner Mailing Address | : 701 13TH ST NW |
| Owner Mailing City, State & Zip | : WASHINGTON,DC,20005 |

## Loan Information

| | | | | | |
|---|---|---|---|---|---|
| Loan Contribution Date | : 04/29/2008 | Maturity Date | : 01/11/2018 | Current Hyper Amortizing Date | : |
| 1st Payment Date | : 11/02/2008 | Original Term | : 120 | Original Amortization Term | : 360 |
| Original Note Amount | : $10,500,000.00 | Original Note Rate | : 6.930 % | Scheduled Int Amt | : $60,167.37 |
| Current Balance | : $10,473,668.41 | Current Note Rate | : 6.930 % | Scheduled Prin Amt | : $9,196.47 |

## Payment Information

| | | | | | |
|---|---|---|---|---|---|
| Paid Through Date | : 04/11/2010 | Payment Status | : 90+ Days Delinquent | Payment Type | : Interest Only / Amortizing / Balloon |
| Payment Frequency | : | Balloon | : Y | Interest Accrual Method | : Actual/360 |
| Interest Only | : Y | | | Interest Rate | : Fixed |
| Payment Reset Frequency | : | | | | |

## ARM Information

| | | | | | |
|---|---|---|---|---|---|
| ARM Index | : | Rate Reset Frequency | : | Life Cap | : |
| Current Index Rate | : | Index Lookback Days | : | Life Floor | : |
| ARM Margin | : | First Payment Adjustment Date | : | | |
| Next Index Rate | : | Next Note Rate | : 6.930 % | Next Rate Adj Date | : |

## Prepayment & Defeasement Terms

| | | | | | |
|---|---|---|---|---|---|
| Defeasance Opt Date | : | Defeasance Status | : No Defeasance Occurred | Prepayment Terms | : 69363.84 |
| Lockout End Date | : | Prepayment Premium | : | Yield Maintenance End | : |



| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

| | End Date | | Date | | |
|---|---|---|---|---|---|

### Reserves Information

**Total Reserve Balance** : $0.00

### Financial Information

| | Most Recent Information | Preceding Fiscal Year Information | 2nd Preceding Fiscal Year Information | Contribution Information | As of Date |
|---|---|---|---|---|---|
| Start Date/Date | 01/01/2009 | 12/31/2008 | | | |
| End Date | 06/30/2009 | | | | |
| Occupancy | 50 % | 100 % | | 100 % | 06/30/2009 |
| Revenue | $31,856.00 | $99,716.20 | $0.00 | $0.00 | |
| Operating Expenses | $20,354.68 | $21,793.50 | $0.00 | $0.00 | |
| NOI | $11,501.32 | $77,922.70 | $0.00 | $0.00 | |
| NCF | $10,575.67 | $76,071.40 | $0.00 | $0.00 | |
| DSCR (NOI) | 1.000 | 1.370 | | 1.320 | |
| DSCR (NCF) | 0.930 | 1.210 | | | |

### Tenant Information

| Credit Tenant Lease | N |
|---|---|
| Ground Lease | N |
| Lease Rollover Review Date | 09/30/2009 |

| Tenant Name | Lease Expiration Date | Sq. Feet | Percent of Building Sq. Feet |
|---|---|---|---|
| Moe's Southwest Grill | 06/30/2010 | 2,400 | 33.95 % |
| Nordvans | 07/31/2014 | 1,778 | 25.15 % |
| GRAVES GOLD LEAF GALLERY | 03/31/2010 | 1,100 | 15.56 % |

**Property Lease Expiration**

| | |
|---|---|
| Sq. Feet Expiring 1-12 months | 50.00 % |
| Sq. Feet Expiring 13-24 months | |
| Sq. Feet Expiring 25-36 months | |
| Sq. Feet Expiring 37-48 months | 25.00 % |
| Sq. Feet Expiring 49+ months | |

### Servicer Information

| | | |
|---|---|---|
| Most Recent : 02/11/2010 Special Servicer Transfer Date | Most Recent : Master Servicer Return Date | Date Added to : Servicer Watchlist |
| Workout Strategy : REO | CMBS Deal Name : Lehman-UBS Comm. Mtge. Trust 2008-C1 | CMBS Short Name : LBUBS 2008-C1 |
| Date of last : Modification | | Realized Loss : $0.00 to Trust |
| Modification : Code | Modification : Note Rate | New P&I : $0.00 |
| Foreclosure : 07/08/2010 Start Date | Date Asset : 07/31/2011 Expected to be Resolved | REO Date : 07/29/2010 |

Page 2 of 4



| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

or
Foreclosed

| | | | | | | |
|---|---|---|---|---|---|---|
| Master Servicer Name | : Wachovia Bank, N.A. | Master Servicer Contact Name | : | Master Servicer Address | : 201 South College Street |
| Master Servicer City | : Charlotte | Master Servicer State | : NC | Master Servicer Zip | : 28244 |
| Master Servicer Phone | : (800) 326-1334 | Master Servicer Email | : | | |
| Master Servicer Website | : https://www.wachovia.com/foundation/v/index.jsp?v gnextoid=87e610a2090ae110VgnVCM1000004b0d1 872RCRD&vgnextfmt=default | Special Servicer Website | : http://www.cwcapital.com/Contact/Pages/AssetMan agement.aspx | | |
| Special Servicer Name | : CW Capital Asset Management LLC | Special Servicer Contact Name | : | Special Servicer Address | : 7501 Wisconsin Avenue, Suite 500 West |
| Special Servicer City | : Bethesda | Special Servicer State | : MD | Special Servicer Zip | : 20814 |
| Special Servicer Phone | : 202-715-9500 | Special Servicer Email | : | | |
| Bankruptcy Date | : | | | | |
| Deal Comments | : No Comments | | | | |

Comments - Servicer Watchlist : 1/31/2010 11:59:00 PM
1/12/10: Subject property is a single tenant Dick's Sporting Goods store containing 45,000 s.f., built in 2007 and located in Madison, TN part of the Jackson, TN MSA. Property is one of four properties in the loan. During the site inspection on 9/21/09, the inspector was limited with regard to interior photos and roof access. Loan is currently past due for the December and January payments. As a whole, the loan is performing at 1.00x according to the YTD06 financials. Borrower has inquired about modifying the loan structure for relief under the current economic circumstances. The special servicer has declined to discuss restructuring the loan at this time.

Comments - REO : 1/1/2011 12:00:00 AM
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower statedthat vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposalfor DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale. Currently working to place all four assets under contract with different buyers.

12/15/2010 12:00:00 AM
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower statedthat vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposalfor DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. 8-10 The assets (4) are currently listed for sale. Exepct to review offers in late October and place assets under contract in Q4 2010.

11/15/2010 12:00:00 AM
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale.


investcap

| Status Highlights | |
|---|---|
| **Payment Status** | : 90+ Days Delinquent |
| **At Special Servicer** | : Yes |
| **Workout Strategy** | : REO |

**9/15/2010 12:00:00 AM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. CWCAM is preparing to place the assets for sale.

**Comments - : 8/31/2010 11:59:00 PM**
**DLSR**
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO which was subsequently rejected as insufficient. On 5/11/10 a receiver was appointed. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Pursuing foreclosure.

**6/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to complete the loan payments out of pocket. Demand Letter sent on 3/02/10. The Borrower submitted a proposal for DPO, which was subsequently rejected. Borrower has remitted only partial cash flow. Borrower signed the PNA on 3/23. An ex parte hearing for Receivership was held on 4/15/10, and the judge issue a TRO for the rents. The Receiver hearing is set for 5/11/10. Estimated foreclosure date is 6/16/10.

**4/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to complete the loan payments out of pocket. 3rd party reports have been ordered and outside legal has been engaged. Demand Letter sent on 3/02/10. The Borrower verbally requested either a modification or a DPO, but no specific terms have yet been submitted. Special Servicer informed Borrower that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower did sign the PNA on 3/23, but has not yet agreed to remit the NCF. Moving forward with Receivership and foreclosure action.

**3/31/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. On 2/22/10, the Borrower stated that vacancy issues at the property and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to support the loan payments. 3rd party reports have been ordered and outside legal has been engaged. The Borrower verbally requested either a modification or a DPO, but no specific terms have been put forth. Special Servicer informed Borrower that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower has not yet agreed to remit NCF. File is being reviewed to determine strategy going forward.

**2/28/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10. File being reviewed to determine workout strategy going forward.

**1/31/2010 11:59:00 PM**
Collection in process.

**List Of Other Properties : 3**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 24-001 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-002 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-003 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |



| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

## Property Information

| | | | | | |
|---|---|---|---|---|---|
| | | Property Name | : Horizon Travel | | |
| Property Address | : 340 Parkstone Place | SMSA Name | : Jackson,TN | Property Type | : Retail |
| Property City | : Jackson | Region Name | : East South Central | Property Status | : Same as at Contribution |
| Property State | : TN | Property Condition | : Good | # of Properties | : 004 |
| Property Zip Code | : 38305 | | | # of Units | : |
| Property County | : MADISON | | | Net Rentable Sq Ft | : 4,300 |

## Property Valuation

| | | | |
|---|---|---|---|
| Valuation at Contribution | : $2,800,000.00 | Original LTV | : 77.92 % |
| Contribution Valuation Date | : 09/28/2007 | Current LTV | : 374.06 % |
| Most Recent Value | : $2,800,000.00 | Updated Periodic Property Value | : $8,925,000.00 |
| Most Recent Valuation Date | : 09/28/2007 | Periodic Value Date | : 03/15/2010 |
| Last Inspection Date | : 09/21/2009 | ARA Amount | : $3,002,826.53 |
| Deferred Maintenance | : N | ARA Date | : 12/13/2010 |

## Property Ownership Information

| | |
|---|---|
| Owner Name | : 340 PARKSTONE PLACE HOLDINGS L, |
| Owner Mailing Address | : 701 13TH ST NW |
| Owner Mailing City, State & Zip | : WASHINGTON,DC,20005 |

## Loan Information

| | | | | | |
|---|---|---|---|---|---|
| Loan Contribution Date | : 04/29/2008 | Maturity Date | : 01/11/2018 | Current Hyper Amortizing Date | : |
| 1st Payment Date | : 11/02/2008 | Original Term | : 120 | Original Amortization Term | : 360 |
| Original Note Amount | : $10,500,000.00 | Original Note Rate | : 6.930 % | Scheduled Int Amt | : $60,167.37 |
| Current Balance | : $10,473,668.41 | Current Note Rate | : 6.930 % | Scheduled Prin Amt | : $9,196.47 |

## Payment Information

| | | | | | |
|---|---|---|---|---|---|
| Paid Through Date | : 04/11/2010 | Payment Status | : 90+ Days Delinquent | Payment Type | : Interest Only / Amortizing / Balloon |
| Payment Frequency | : | Balloon | : Y | Interest Accrual Method | : Actual/360 |
| Interest Only | : Y | | | Interest Rate | : Fixed |
| Payment Reset Frequency | : | | | | |

## ARM Information

| | | | | | |
|---|---|---|---|---|---|
| ARM Index | : | Rate Reset Frequency | : | Life Cap | : |
| Current Index Rate | : | Index Lookback Days | : | Life Floor | : |
| ARM Margin | : | First Payment Adjustment Date | : | | |
| Next Index Rate | : | Next Note Rate | : 6.930 % | Next Rate Adj Date | : |

## Prepayment & Defeasance Terms

| | | | | | |
|---|---|---|---|---|---|
| Defeasance Opt Date | : | Defeasance Status | : No Defeasance Occurred | Prepayment Terms | : 69363.84 |
| Lockout End Date | : | Prepayment Premium | : | Yield Maintenance End | : |


**investcap**

| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

| | End Date | | Date | |
|---|---|---|---|---|

**Reserves Information**

Total Reserve Balance          : $0.00

**Financial Information**

| | Most Recent Information | Preceding Fiscal Year Information | 2nd Preceding Fiscal Year Information | Construction Information | As of Date |
|---|---|---|---|---|---|
| Start Date/Date | 01/01/2009 | 12/31/2008 | | | |
| End Date | 06/30/2009 | | | | |
| Occupancy | 100 % | | | 100 % | 06/30/2009 |
| Revenue | $6,536.00 | $101,334.34 | $0.00 | $0.00 | |
| Operating Expenses | $17,783.00 | $16,327.33 | $0.00 | $0.00 | |
| NOI | ($11,247.00) | $85,007.01 | $0.00 | $0.00 | |
| NCF | ($13,452.61) | $80,595.36 | $0.00 | $0.00 | |
| DSCR (NOI) | 1.000 | 1.370 | | 1.320 | |
| DSCR (NCF) | -0.180 | 0.540 | | | |

**Tenant Information**

Credit Tenant Lease          N
Ground Lease          N
Lease Rollover Review Date          09/30/2009

| Tenant Name | Lease Expiration Date | Sq Ft | Percent of Building Sq Ft |
|---|---|---|---|
| Mustafa Jabr and Amer Al-Jafar | 03/31/2019 | 4,300 | 100.00 % |

Property Lease Expiration
Sq. Feet Expiring 1-12 months
Sq. Feet Expiring 13-24 months
Sq. Feet Expiring 25-36 months
Sq. Feet Expiring 37-48 months
Sq. Feet Expiring 49+ months          100.00 %

**Servicer Information**

Most Recent : 02/11/2010
Special
Servicer
Transfer
Date

Workout          : REO
Strategy

Date of last :
Modification

Modification :
Code

Foreclosure : 07/09/2010
Start Date

Most Recent :
Master
Servicer
Return Date

CMBS Deal     : Lehman-UBS Comm. Mtge. Trust 2008-C1
Name

Modification :
Note Rate

Date Asset     : 07/31/2011
Expected to
be Resolved
or
Foreclosed

Date Added to :
Servicer
Watchlist

CMBS Short     : LBUBS 2008-C1
Name

Realized Loss : $0.00
to Trust

New P&I          : $0.00

REO Date          : 07/29/2010

 **investcap**

| Status Highlights | |
|---|---|
| **Payment Status** | : 90+ Days Delinquent |
| **At Special Servicer** | : Yes |
| **Workout Strategy** | : REO |

| | | | | | | |
|---|---|---|---|---|---|---|
| Master Servicer Name | : Wachovia Bank, N.A. | Master Servicer Contact Name | : | | Master Servicer Address | : 201 South College Street |
| Master Servicer City | : Charlotte | Master Servicer State | : NC | | Master Servicer Zip | : 28244 |
| Master Servicer Phone | : (800) 326-1334 | Master Servicer Email | : | | | |
| Master Servicer Website | : https://www.wachovia.com/foundation/v/index.jsp?v gnextoid=87e610e2090aa110VgnVCM1000004b0d1 872RCRD&vgnextfmt=default | Special Servicer Website | : http://www.cwcapital.com/Contact/Pages/AssetMan agement.aspx | | | |
| Special Servicer Name | : CW Capital Asset Management LLC | Special Servicer Contact Name | : | | Special Servicer Address | : 7501 Wisconsin Avenue, Suite 500 West |
| Special Servicer City | : Bethesda | Special Servicer State | : MD | | Special Servicer Zip | : 20814 |
| Special Servicer Phone | : 202-715-9500 | Special Servicer Email | : | | | |
| Bankruptcy Date | : | | | | | |
| Deal Comments | : No Comments | | | | | |

**Comments - Servicer Watchlist** : 1/31/2010 11:59:00 PM
1/12/10: Subject property is a single tenant Dick's Sporting Goods store containing 45,000 s.f., built in 2007 and located in Madison, TN part of the Jackson, TN MSA. Property is one of four properties in the loan. During the site inspection on 9/21/09, the inspector was limited with regard to interior photos and roof access. Loan is currently past due for the December and January payments. As a whole, the loan is performing at 1.00x according to the YTD06 financials. Borrower has inquired about modifying the loan structure for relief under the current economic circumstances. The special servicer has declined to discuss restructuring the loan at this time.

**Comments - REO** : 1/1/2011 12:00:00 AM
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale. Currently working to place all four assets under contract with different buyers.

12/15/2010 12:00:00 AM
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. 8-10 The assets (4) are currently listed for sale. Exect to review offers in late October and place assets under contract in Q4 2010.

11/15/2010 12:00:00 AM
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale.

9/15/2010 12:00:00 AM
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson,

 **investcap**

| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. CWCAM is preparing to place the assets for sale.

**Comments – : 8/31/2010 11:59:00 PM**
**DLSR**
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. The Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO which was subsequently rejected as insufficient. On 5/11/10 a receiver was appointed. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Pursuing foreclosure.

**6/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover the loan payments out of pocket. Demand Letter sent on 3/02/10. The Borrower submitted a proposal for DPO, which was subsequently rejected. Borrower has remitted only partial cash flow. Borrower signed the PNA on 3/23. An ex parte hearing for Receivership was held on 4/15/10, and the judge issue a TRO for the rents. The Receiver hearing is set for 5/11/10. Estimated foreclosure date is 6/16/10.

**4/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to complete the loan payments out of pocket. 3rd party reports have been ordered and outside legal has been engaged. Demand Letter sent on 3/02/10. The Borrower verbally requested either a modification or a DPO, but no specific terms have yet been submitted. Special Servicer informed Borrower that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower did sign the PNA on 3/23, but has not yet agreed to remit the NCF. Moving forward with Receivership and foreclosure action.

**3/31/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. On 2/22/10, the Borrower stated that vacancy issues at the property and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to support the loan payments. 3rd party reports have been ordered and outside legal has been engaged. The Borrower verbally requested either a modification or a DPO, but no specific terms have been put forth. Special Servicer informed Borrower that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower has not yet agreed to remit NCF. File is being reviewed to determine strategy going forward.

**2/28/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10. File being reviewed to determine workout strategy going forward.

**1/31/2010 11:59:00 PM**
Collection in process.

**List Of Other Properties : 3**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 24-001 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-002 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-004 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |

 **investcap**

| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

### Property Information

| | | | | | |
|---|---|---|---|---|---|
| Property Address | : 1165 Vann Drive | Property Name | : Dick's Sporting Goods | Property Type | : Retail |
| Property City | : Jackson | SMSA Name | : Jackson,TN | Property Status | : Same as at Contribution |
| Property State | : TN | Region Name | : East South Central | # of Properties | : 004 |
| Property Zip Code | : 38305 | Property Condition | : Poor | # of Units | : |
| Property County | : MADISON | | | Net Rentable Sq Ft | : 45,000 |

### Property Valuation

| | | | |
|---|---|---|---|
| Valuation at Contribution | : $6,950,000.00 | Original LTV | : 77.92 % |
| Contribution Valuation Date | : 09/28/2007 | Current LTV | : 150.70 % |
| Most Recent Value | : $6,950,000.00 | Updated Periodic Property Value | : $6,925,000.00 |
| Most Recent Valuation Date | : 09/28/2007 | Periodic Value Date | : 03/15/2010 |
| Last Inspection Date | : 09/21/2009 | ARA Amount | : $3,002,826.53 |
| Deferred Maintenance | : N | ARA Date | : 12/13/2010 |

### Property Ownership Information

| | |
|---|---|
| Owner Name | : NG 1165 VANN LLC |
| Owner Mailing Address | : 1165 VANN DR |
| Owner Mailing City, State & Zip | : JACKSON,TN,38305 |

### Loan Information

| | | | | | |
|---|---|---|---|---|---|
| Loan Contribution Date | : 04/29/2008 | Maturity Date | : 01/11/2018 | Current Hyper Amortizing Date | : |
| 1st Payment Date | : 11/02/2008 | Original Term | : 120 | Original Amortization Term | : 360 |
| Original Note Amount | : $10,500,000.00 | Original Note Rate | : 6.930 % | Scheduled Int Amt | : $60,167.37 |
| Current Balance | : $10,473,668.41 | Current Note Rate | : 6.930 % | Scheduled Prin Amt | : $9,196.47 |

### Payment Information

| | | | | | |
|---|---|---|---|---|---|
| Paid Through Date | : 04/11/2010 | Payment Status | : 90+ Days Delinquent | Payment Type | : Interest Only / Amortizing / Balloon |
| Payment Frequency | : | Balloon | : Y | Interest Accrual Method | : Actual/360 |
| Interest Only | : Y | | | Interest Rate | : Fixed |
| Payment Reset Frequency | : | | | | |

### ARM Information

| | | | | | |
|---|---|---|---|---|---|
| ARM Index | : | Rate Reset Frequency | : | Life Cap | : |
| Current Index Rate | : | Index Lookback Days | : | Life Floor | : |
| ARM Margin | : | First Payment Adjustment Date | : | | |
| Next Index Rate | : | Next Note Rate | : 6.930 % | Next Rate Adj Date | : |

### Prepayment & Defeasance Terms

| | | | | | |
|---|---|---|---|---|---|
| Defeasance Opt Date | : | Defeasance Status | : No Defeasance Occurred | Prepayment Terms | : 69363.84 |
| Lockout End Date | : | Prepayment Premium End Date | : | Yield Maintenance End Date | : |



**investcap**

| Status Highlights | |
|---|---|
| **Payment Status** | : 90+ Days Delinquent |
| **At Special Servicer** | : Yes |
| **Workout Strategy** | : REO |

### Reserves Information

**Total Reserve Balance** : $0.00

### Financial Information

| | Most Recent Information | Preceding Fiscal Year Information | 2nd Preceding Fiscal Year Information | Contribution Information | As of Date |
|---|---|---|---|---|---|
| Start Date/Date | 01/01/2009 | 12/31/2008 | | | |
| End Date | 06/30/2009 | | | | |
| Occupancy | 100 % | 100 % | | 100 % | 06/30/2009 |
| Revenue | $331,625.00 | $697,631.89 | $0.00 | $0.00 | |
| Operating Expense | $74,096.75 | $69,998.21 | $0.00 | $0.00 | |
| NOI | $257,528.25 | $627,633.68 | $0.00 | $0.00 | |
| NCF | $252,053.10 | $616,663.38 | $0.00 | $0.00 | |
| DSCR (NOI) | 1.000 | 1.370 | | 1.320 | |
| DSCR (NCF) | 1.330 | 1.680 | | | |

### Tenant Information

| | |
|---|---|
| **Credit Tenant Lease** | N |
| **Ground Lease** | N |
| **Lease Rollover Review Date** | 09/30/2009 |

| Tenant Name | Lease Expiration Date | Square Feet | Percent of Building Sq Feet |
|---|---|---|---|
| Dick's Sporting Goods | 10/31/2017 | 45,000 | 100.00 % |

**Property Lease Expiration**

| | |
|---|---|
| Sq. Feet Expiring 1-12 months | |
| Sq. Feet Expiring 13-24 months | |
| Sq. Feet Expiring 25-36 months | |
| Sq. Feet Expiring 37-48 months | |
| Sq. Feet Expiring 49+ months | 100.00 % |

### Servicer Information

| | | |
|---|---|---|
| **Most Recent Special Servicer Transfer Date** : 02/11/2010 | **Most Recent Master Servicer Return Date** : | **Date Added to Servicer Watchlist** : |
| **Workout Strategy** : REO | **CMBS Deal Name** : Lehman-UBS Comm. Mtge. Trust 2008-C1 | **CMBS Short Name** : LBUBS 2008-C1 |
| **Date of last Modification** : | **Modification Note Rate** : | **Realized Loss to Trust** : $0.00 |
| **Modification Code** : | | **New P&I** : $0.00 |
| **Foreclosure Start Date** : 07/09/2010 | **Date Asset Expected to be Resolved or Foreclosed** : 07/31/2011 | **REO Date** : 07/29/2010 |
| **Master** : Wachovia Bank, N.A. | **Master** : | **Master** : 201 South |


**investcap**

| Status Highlights | |
|---|---|
| **Payment Status** | : 90+ Days Delinquent |
| **At Special Servicer** | : Yes |
| **Workout Strategy** | : REO |

| | | | | | |
|---|---|---|---|---|---|
| **Servicer Name** | | **Servicer Contact Name** | | **Servicer Address** | College Street |
| **Master Servicer City** | : Charlotte | **Master Servicer State** | : NC | **Master Servicer Zip** | : 28244 |
| **Master Servicer Phone** | : (800) 326-1334 | **Master Servicer Email** | : | | |
| **Master Servicer Website** | : https://www.wachovia.com/foundation/v/index.jsp?vgnextoid=87e810e2090ea110VgnVCM1000004b0d1872RCRD&vgnextfmt=default | **Special Servicer Website** | : http://www.cwcapital.com/Contact/Pages/AssetManagement.aspx | | |
| **Special Servicer Name** | : CW Capital Asset Management LLC | **Special Servicer Contact Name** | : | **Special Servicer Address** | : 7501 Wisconsin Avenue, Suite 500 West |
| **Special Servicer City** | : Bethesda | **Special Servicer State** | : MD | **Special Servicer Zip** | : 20814 |
| **Special Servicer Phone** | : 202-715-9500 | **Special Servicer Email** | : | | |
| **Bankruptcy Date** | : | | | | |
| **Deal Comments** | : No Comments | | | | |

**Comments - Servicer Watchlist** : 1/31/2010 11:59:00 PM

1/12/10: Subject property is a single tenant Dick's Sporting Goods store containing 45,000 s.f., built in 2007 and located in Madison, TN part of the Jackson, TN MSA. Property is one of four properties in the loan. During the site inspection on 9/21/09, the inspector was limited with regard to interior photos and roof access. Loan is currently past due for the December and January payments. As a whole, the loan is performing at 1.00x according to the YTD06 financials. Borrower has inquired about modifying the loan structure for relief under the current economic circumstances. The special servicer has declined to discuss restructuring the loan at this time.

**Comments - REO** : 1/1/2011 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale. Currently working to place all four assets under contract with different buyers.

12/15/2010 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. 8-10 The assets (4) are currently listed for sale. Exepct to review offers in late October and place assets under contract in Q4 2010.

11/15/2010 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale.

9/15/2010 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in



| Status Highlights | |
|---|---|
| **Payment Status** | : 90+ Days Delinquent |
| **At Special Servicer** | : Yes |
| **Workout Strategy** | : REO |

cash flow. Borrower is not willing to complete the loan payments out of pocket. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/25/10. CWCAM is preparing to place the assets for sale.

**Comments - : 8/31/2010 11:59:00 PM**
**DLSR**   Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO which was subsequently rejected as insufficient. On 5/11/10 a receiver was appointed. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Pursuing foreclosure,

**6/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to complete the loan payments out of pocket. Demand Letter sent on 3/02/10. Borrower signed the PNA on 3/23. An ex parte hearing for Receivership was held on 4/15/10, and the judge issue a TRO for the rents. The Receiver hearing is set for 5/11/10. Estimated foreclosure date is 6/16/10.

**4/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to complete the loan payments out of pocket. 3rd party reports have been ordered and outside legal has been engaged. Demand Letter sent on 3/02/10. The Borrower verbally requested either a modification or a DPO, but no specific terms have yet been submitted. Special Servicer informed Borrower that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower did sign the PNA on 3/23, but has not yet agreed to remit the NCF. Moving forward with Receivership and foreclosure action.

**3/31/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. On 2/22/10, the Borrower stated that vacancy issues at the property and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to support the loan payments. 3rd party reports have been ordered and outside legal has been engaged. The Borrower verbally requested either a modification or a DPO, but no specific terms have put forth. Special Servicer informed Borrower that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower has not yet agreed to remit NCF. File is being reviewed to determine strategy going forward.

**2/28/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10. File being reviewed to determine workout strategy going forward.

**1/31/2010 11:59:00 PM**
Collection in process.

**List Of Other Properties : 3**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 24-002 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-003 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-004 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |



| Status Highlights | |
|---|---|
| **Payment Status** | : 90+ Days Delinquent |
| **At Special Servicer** | : Yes |
| **Workout Strategy** | : REO |

## Property Information

| | | | | | |
|---|---|---|---|---|---|
| **Property Address** | : 228 Parkstone Place | **Property Name** | : Park Place | **Property Type** | : Retail |
| **Property City** | : Jackson | **SMSA Name** | : Jackson, TN | **Property Status** | : Same as at Contribution |
| **Property State** | : TN | **Region Name** | : East South Central | **# of Properties** | : 004 |
| **Property Zip Code** | : 38305 | **Property Condition** | : Fair | **# of Units** | : |
| **Property County** | : MADISON | | | **Net Rentable Sq Ft** | : 14,400 |

## Property Valuation

| | | | |
|---|---|---|---|
| **Valuation at Contribution** | : $2,550,000.00 | **Original LTV** | : 77.92 % |
| **Contribution Valuation Date** | : 09/28/2007 | **Current LTV** | : 598.50 % |
| **Most Recent Value** | : $1,750,000.00 | **Updated Periodic Property Value** | : $8,925,000.00 |
| **Most Recent Valuation Date** | : 03/16/2010 | **Periodic Value Date** | : 03/15/2010 |
| **Last Inspection Date** | : 09/21/2009 | **ARA Amount** | : $3,002,826.53 |
| **Deferred Maintenance** | : N | **ARA Date** | : 12/13/2010 |

## Property Ownership Information

| | |
|---|---|
| **Owner Name** | : |
| **Owner Mailing Address** | : |
| **Owner Mailing City, State & Zip** | : |

## Loan Information

| | | | | | |
|---|---|---|---|---|---|
| **Loan Contribution Date** | : 04/29/2008 | **Maturity Date** | : 01/11/2018 | **Current Hyper Amortizing Date** | : |
| **1st Payment Date** | : 11/02/2008 | **Original Term** | : 120 | **Original Amortization Term** | : 360 |
| **Original Note Amount** | : $10,500,000.00 | **Original Note Rate** | : 6.930 % | **Scheduled Int Amt** | : $60,167.37 |
| **Current Balance** | : $10,473,668.41 | **Current Note Rate** | : 6.930 % | **Scheduled Prin Amt** | : $9,196.47 |

## Payment Information

| | | | | | |
|---|---|---|---|---|---|
| **Paid Through Date** | : 04/11/2010 | **Payment Status** | : 90+ Days Delinquent | **Payment Type** | : Interest Only / Amortizing / Balloon |
| **Payment Frequency** | : | **Balloon** | : Y | **Interest Accrual Method** | : Actual/360 |
| **Interest Only** | : Y | | | **Interest Rate** | : Fixed |
| **Payment Reset Frequency** | : | | | | |

## ARM Information

| | | | | | |
|---|---|---|---|---|---|
| **ARM Index** | : | **Rate Reset Frequency** | : | **Life Cap** | : |
| **Current Index Rate** | : | **Index Lookback Days** | : | **Life Floor** | : |
| **ARM Margin** | : | **First Payment Adjustment Date** | : | | |
| **Next Index Rate** | : | **Next Note Rate** | : 6.930 % | **Next Rate Adj Date** | : |

## Prepayment & Defeasement Terms

| | | | | | |
|---|---|---|---|---|---|
| **Defeasance Opt Date** | : | **Defeasance Status** | : No Defeasance Occurred | **Prepayment Terms** | : 69353.84 |
| **Lockout End Date** | : | **Prepayment Premium End Date** | : | **Yield Maintenance End Date** | : |

Page 1 of 4

 **investcap**

| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

### Reserves Information

Total Reserve : $0.00
Balance

### Financial Information

| | Most Recent Information | Preceding Fiscal Year Information | 2nd Preceding Fiscal Year Information | Contribution Information | | As of Date |
|---|---|---|---|---|---|---|
| Start Date/Date | 01/01/2009 | 12/31/2008 | | | | |
| End Date | 06/30/2009 | | | | | |
| Occupancy | 78 % | 100 % | | 100 % | | 06/30/2009 |
| Revenue | $97,113.00 | $251,187.22 | $0.00 | $0.00 | | |
| Operating Expenses | $33,797.39 | $39,420.97 | $0.00 | $0.00 | | |
| NOI | $63,315.61 | $211,766.25 | $0.00 | $0.00 | | |
| NCF | $61,306.75 | $207,746.50 | $0.00 | $0.00 | | |
| DSCR (NOI) | 1.000 | 1.370 | | 1.320 | | |
| DSCR (NCF) | 0.880 | 1.530 | | | | |

### Tenant Information

Credit Tenant Lease     N
Ground Lease     N
Lease Rollover Review Date     09/30/2009

| Tenant Name | Lease Expiration Date | Sq Ft | Percent of Building Sq Ft |
|---|---|---|---|
| Sparky s | 09/30/2017 | 8,000 | 55.56 % |
| Los Portales | 12/31/2013 | 3,200 | 22.22 % |

Property Lease Expiration
Sq. Feet Expiring 1-12 months
Sq. Feet Expiring 13-24 months
Sq. Feet Expiring 25-36 months
Sq. Feet Expiring 37-48 months     22.00 %
Sq. Feet Expiring 49+ months     56.00 %

### Servicer Information

| | | |
|---|---|---|
| Most Recent : 02/11/2010 Special Servicer Transfer Date | Most Recent : Master Servicer Return Date | Date Added to : Servicer Watchlist |
| Workout Strategy : REO | CMBS Deal : Lehman-UBS Comm. Mtge. Trust 2008-C1 Name | CMBS Short Name : LBUBS 2008-C1 |
| Date of last : Modification | | Realized Loan : $0.00 to Trust |
| Modification : Code | Modification : Note Rate | New P&I : $0.00 |
| Foreclosure : 07/09/2010 Start Date | Date Asset : 07/31/2011 Expected to be Resolved or Foreclosed | REO Date : 07/29/2010 |

 **investcap**

| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

| | | | | | | |
|---|---|---|---|---|---|---|
| Master Servicer Name | : Wachovia Bank, N.A. | Master Servicer Contact Name | : | Master Servicer Address | : 201 South College Street |
| Master Servicer City | : Charlotte | Master Servicer State | : NC | Master Servicer Zip | : 28244 |
| Master Servicer Phone | : (800) 326-1334 | Master Servicer Email | | | |
| Master Servicer Website | : https://www.wachovia.com/foundation/v/index.jsp?v gnextoid=87e610a2090aa110VgnVCM1000004b0d1 872RCRD&vgnextfmt=default | Special Servicer Website | : http://www.cwcapital.com/Contact/Pages/AssetMan agement.aspx | | |
| Special Servicer Name | : CW Capital Asset Management LLC | Special Servicer Contact Name | : | Special Servicer Address | : 7501 Wisconsin Avenue, Suite 500 West |
| Special Servicer City | : Bethesda | Special Servicer State | : MD | Special Servicer Zip | : 20814 |
| Special Servicer Phone | : 202-715-9500 | Special Servicer Email | | | |
| Bankruptcy Date | : | | | | |
| Deal Comments | : No Comments | | | | |

**Comments - Servicer Watchlist** : 1/31/2010 11:59:00 PM

1/12/10: Subject property is a single tenant Dick's Sporting Goods store containing 45,000 s.f., built in 2007 and located in Madison, TN part of the Jackson, TN MSA. Property is one of four properties in the loan. During the site inspection on 9/21/09, the inspector was limited with regard to interior photos and roof access. Loan is currently past due for the December and January payments. As a whole, the loan is performing at 1.00x according to the YTD08 financials. Borrower has inquired about modifying the loan structure for relief under the current economic circumstances. The special servicer has declined to discuss restructuring the loan at this time.

**Comments - REO** : 1/1/2011 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale. Currently working to place all four assets under contract with different buyers.

12/15/2010 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. 8-10 The assets (4) are currently listed for sale. Exepct to review offers in late October and place assets under contract in Q4 2010.

11/15/2010 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. The assets (4) are currently listed for sale.

9/15/2010 12:00:00 AM

Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson,



| Status Highlights | |
|---|---|
| Payment Status | : 90+ Days Delinquent |
| At Special Servicer | : Yes |
| Workout Strategy | : REO |

TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Borrower is not willing to complete the loan payments out of pocket. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO on 4/15/10, which was subsequently rejected as insufficient. On 5/11/10, the Jackson, TN Court granted our motion to appoint a receiver. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Foreclosure occured on 7/29/10. CWCAM is preparing to place the assets for sale.

**Comments - : 8/31/2010 11:59:00 PM**
**DLSR**
Loan transferred to special servicing effective 2/11/10 due to monetary default. The subject consists of 4 separate retail properties in Jackson, TN. The Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. The 12/31/09 DSCR was 0.86. However, the 3/31/10 YTD DSCR was reported at 1.20, and occupancy was reported at 89.1%. A Demand Letter was sent on 3/02/10. Borrower signed the PNA on 3/23. The Borrower submitted a proposal for DPO which was subsequently rejected as insufficient. On 5/11/10 a receiver was appointed. The Court also found that the Borrower had violated the SPE provisions by taking on additional and unauthorized debt by its own admission. As a result, the Court declared that the loan is now full recourse to the Guarantors. Pursuing foreclosure.

**6/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to complete the loan payments out of pocket. Demand Letter sent on 3/02/10. The Borrower submitted a proposal for DPO, which was subsequently rejected. Borrower has remitted only partial cash flow. Borrower signed the PNA on 3/23. An ex parte hearing for Receivership was held on 4/15/10, and the judge issue a TRO for the rents. The Receiver hearing is set for 5/11/10. Estimated foreclosure date is 6/16/10.

**4/30/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. The subject consists of 4 separate retail properties in Jackson, TN. On 2/22/10, the Borrower stated that vacancy issues at the properties and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to complete the loan payments out of pocket. 3rd party reports have been ordered and outside legal has been engaged. Demand Letter sent on 3/02/10. The Borrower verbally requested either a modification or a DPO, but no specific terms have yet been submitted. Special Servicer informed Borrower on 3/02/10 that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower did sign the PNA on 3/23, but has not yet agreed to remit the NCF. Moving forward with Receivership and foreclosure action.

**3/31/2010 11:59:00 PM**
Loan transferred to special servicing effective 2/11/10 due to a 60-day payment delinquency. On 2/22/10, the Borrower stated that vacancy issues at the property and severely reduced market rental rates for new tenants have resulted in a significant drop in cash flow. Cash flow is now insufficient to cover debt service, and the Borrower is not willing to support the loan payments. 3rd party reports have been ordered and outside legal has been engaged. The Borrower verbally requested either a modification or a DPO, but no specific terms have been put forth. Special Servicer informed Borrower that all net cash flow generated by the property during the default period is required to be remitted to the Master Servicer. Borrower has not yet agreed to remit NCF. File is being reviewed to determine strategy going forward.

**2/28/2010 11:59:00 PM**
Loan transfered to special servicing effective 2/11/10. File being reviewed to determine workout strategy going forward.

**1/31/2010 11:59:00 PM**
Collection in process.

**List Of Other Properties : 3**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 24-001 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-003 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |
| 24-004 | TN | Jackson | MADISON | Retail | 01/11/2018 | $10,473,668.41 | 6.930 % | $10,500,000.00 | 120 | 360 |